AUGUSTINE, Judge.
On April 3, 1980, a New Orleans Sanitation Department garbage truck collided with an eighteen-wheel freight hauler, causing multiple injuries to its occupant, Curtis Keeler. Keeler filed this action for tort damages against the City of New Orleans (the owner of the garbage truck), and against John Cannon III (the driver). Following trial on the merits, the trial court awarded $30,000.00 to the plaintiff for his various injuries, but specifically rejected that part of his claim arising from an alleged injury to his right hand.
Keeler now appeals, contending that the trial court erred in finding that:
“The Plaintiff failed to prove with the degree of certainty required by law that the serious damage to his hand was caused by the accident.” Reasons for Judgment.
We begin our discussion of the merits of this case by emphasizing this fact: the trial court accepted as true that the plaintiff has suffered “serious damage to his hand.” Since the evidence abundantly supports this conclusion, the only question which remains is whether the trial court committed manifest error in finding that the accident did not cause the injury.
As of the time of this accident, the plaintiff had spent the past thirteen years doing the arduous work of a freight handler and truck driver for McLean Trucking Lines. On April 3,1980, Keeler was about to deliver a load of cigars to the warehouse of U. Koen, Inc., a tobacco dealer, located on Elysian Fields Avenue in New Orleans. When he arrived there, Keeler backed the trailer to the doors of U. Koen’s loading dock and brought his truck to a stop. Since U. Koen’s freight doors were closed, as usual, Keeler had to get down from the truck and ring the delivery bell, signalling to the warehouse employees that their shipment had arrived. As the plaintiff stepped from the cab onto the truck’s running board, he heard a loud noise and turned to see the City’s garbage truck sliding towards him on the rain-slick pavement. Believing himself to be directly in the truck’s path, Keeler hurled himself back into his own cab, diving across the seats with considerable force. The City’s truck collided with Keeler’s, and although Keeler did escape being hit, he contends that he suffered permanent injury when his outstretched right arm broke the momentum of his lunge across the front seat, or more precisely, when his right hand struck the vent on the passenger’s side of the truck.
Keeler first reported difficulty with his right hand to doctors at the Chalmette General Hospital out-patient clinic on April 8, 1980, five days after entering the hospital for treatment of other accident-related injuries. On April 14, the plaintiff was examined by Daniel Seltzer, M.D., an orthopedist, who noted tenderness in the plaintiff’s right wrist. Dr. Seltzer administered a simple diagnostic procedure known as a Finkelstein’s test which proved positive for DeQuervain’s disease, a condition marked by inflammation and constriction of the strap-like sheath which surrounds the bundle of tendons which provide mobility to the thumb. Movement of these tendons through the swollen sheath produces great pain, which is aggravated by the breakdown of synovium, the fluid which lubricates the sheath and allows the tendons to glide freely through it.
Dr. Seltzer’s original treatment of the plaintiff was conservative; he prescribed anti-inflammatory medication and instruct *1344 ed Keeler to return in two weeks. There was no real improvement in the plaintiffs condition, however, and on August 5, 1980 (four months after the accident), Keeler underwent surgery. Dr. Seltzer opened the first compartment of the right wrist and discovered stenosis or narrowing of the tendon sheath, a finding consistent with his earlier diagnosis of DeQuervain’s disease. Dr. Seltzer cut the sheath in order to release the tendons, allowing them to once again move freely back and forth.
Although such surgery is ordinarily quite successful, Mr. Keeler did not improve as much as expected following his operation. Nevertheless, Dr. Seltzer advised him to return to work on a trial basis, and so, on October 1, 1980 the plaintiff resumed his occupation at McLean Truck Lines. This work, of course, required Keeler to be constantly lifting freight, and his right hand was almost always in pain. Keeler again left his employment and returned to Dr. Seltzer on March 1, 1981 complaining of , numbness and tingling in his fingers.
After eight more months of unsuccessful treatment Dr. Seltzer referred the plaintiff to another orthopedist, John McLachlan, M.D., who, following his examination of Keeler, concluded (with Dr. Seltzer) that a second operation would be required. Dr. McLachlin suspected that the lingering pain and immobility of the patient’s thumb were caused by scarring of the sheath as a result of the previous surgery. Dr. Seltzer believed, however, that there might be stenosis in yet another tendon sheath, one which had not been explored during the first surgery.
On November 20, 1981, plaintiff underwent a second operation. Reopening the first compartment of Keeler’s right wrist, Dr. Seltzer discovered and removed the scar tissue produced by the earlier incision. For the first time, Dr. Seltzer also opened a second compartment in the plaintiff’s wrist, and found inflammation in a tendon sheath where none had been discovered before. Dr. Seltzer again cut the sheath, thus releasing the tendon. Despite this surgery, however, plaintiff continues to complain of pain and immobility in his right thumb. In Dr. Seltzer’s opinion, the plaintiff is permanently and partially disabled, as there is nothing that can be done to improve his condition.
At trial, Dr. Seltzer testified that there is a causal link between the accident and plaintiff’s injury; he offered the following reasons to support this conclusion:
First, the doctor stated, DeQuervain’s disease has only three known causes: trauma, occupational stress, and rheumatoid arthritis. Since plaintiff’s medical history revealed no prior bouts of pain or immobility in his right hand, and because the plaintiff’s first report of these difficulties so closely followed the accident of April 3, Dr. Seltzer discounted occupational stress as the most likely cause of the injury. Moreover, since Keeler had no history of trouble in his joints — and tests for arthritis proved negative — Dr. Seltzer disregarded the possibility that rheumatoid arthritis caused Keeler’s injury.
Keeler himself testified that he had never experienced pain in his right hand until after the accident of April 3, and moreover, that during his thirteen years as a freight handler and truck driver, he had never missed a day’s work because of any problem with his hands. Indeed, the plaintiff performed strenuous work with his hands on the day of the accident.
The plaintiff’s wife corroborated these statements, testifying that during their marriage, she had never heard her husband complain of pain in his right or left hand.
The defendants presented no employment or medical records to directly dispute the foregoing evidence, but asserted that the plaintiff’s injury was “occupational”, i.e. caused by the repeated stress of Keel-er’s day-to-day work as a freight handler. The defendants’ position is based upon Dr. Seltzer’s admission that in a great percentage of the reported cases of DeQuervain’s disease, occupational stress is the cause. The defendants also cite a medical textbook (submitted in evidence) for the proposition that “the cause (of DeQuervain’s) is almost always occupational or associated with rheumatoid arthritis.” Campbell’s Opera *1345 tive Orthopedics (S. Edmonson, M.D. & A.H. Crenshaw 6th ed. 1980), Vol. 1, p. 364.
Given that the trial court believed the plaintiff to have suffered “serious damage to his hand” (Reasons for Judgment), and given that the only theory of causation offered in opposition to plaintiffs was that Keeler’s condition was occupation-related, the trial court’s finding that Keeler failed to prove causation necessarily implies that the lower court considered the defendant’s theory to be more likely than the plaintiff’s as a causal explanation. We think such a finding is erroneous as a matter of law.
Clearly, the plaintiff established that, more likely than not, the April 3 trauma was the cause of his injury. It then became incumbent upon the defendant to prove otherwise. The appellees’ entire defense, as to causation, is tied to the proposition that “the cause (of DeQuervain’s) is almost always occupational or associated with rheumatoid arthritis”. But such a statement, even if true, does not disprove that trauma caused the plaintiff’s injury. Indeed, such a statement cannot, as a logical matter, undermine the assertion that every instance of trauma such as that suffered by the plaintiff will result in DeQuer-vain’s disease; and being unable to disprove the universal, the statement certainly cannot disprove the particular. In other words, the causal relationship between occupational stress and DeQuervain’s is wholly independent of the relationship between trauma and DeQuervain’s. The defendants, therefore, must be considered as having presented no countervailing evidence on the issue of causation. Under these circumstances, the plaintiff must prevail because it remains more likely than not that the accident caused the injury.
DAMAGES
By stipulation of the City of New Orleans and John Cannon III, plaintiff Keeler offered into evidence the record of his wages earned while in the employ of McLean Trucking Company between 1970 and 1981. The defendants also stipulated to the plaintiff’s submission of the report of Seymour S. Goodman, Ph.D., a professor of economics at the Tulane University School of Business. Dr. Goodman’s report states that the anticipated loss of earnings from the scheduled date of trial (May 18, 1982) to the end of Mr. Keeler’s work life expectancy (calculated as 26.1 additional years) amounts to $317,930.83. In arriving at this sum, Dr. Goodman assumed that Keeler would soon obtain employment which pays 20% in excess of federal minimum wage, a well-founded assumption, considering that Keeler’s disability was only partial, and that he is capable of performing light functions with his right hand.
The defendants have offered no opposing estimate of damages, and they appear to admit that if the plaintiff’s injury was caused by the accident, the damages calculated by Dr. Goodman are appropriate.
Accordingly, that part of the trial court’s judgment which denied plaintiff recovery for injury to his right hand is hereby reversed, and the defendants shall be solidarity bound to pay damages to the plaintiff in the amount of $317,930.83, with interest from date of demand, this sum payable in addition to the amount already awarded for injuries other than those in dispute on this appeal. The judgment of the trial court is affirmed in all other respects.
REVERSED IN PART.